## STATE ex HATTERY v COLUMBUS (city) et

Ohio Appeals, 2nd Dist, Franklin Co

No 2590. Decided June 2, 1938

524

Matthew L. Bigger, Columbus, for plaintiff.

John L. Davies, City Attorney, Columbus, for defendant.

## OPINION

By BARNES, PJ.

This is an original action in mandamus.

Plaintiff prays for a mandatory writ to be issued against the defendants ordering and directing that plaintiff be reinstated to his position of patrolman in the police department of the city of Columbus and that he may have the appropriate order directing the defendants and the duly authorized officers of the city to issue to this plaintiff a voucher for the amount which may be found due and directing the defendant, Samuel J. Willis, City Auditor, to deliver to the relator a warrant on the treasury of said city for the amount so found due.

The issues between the parties are drawn through plaintiff's petition, joint answer of defendants and plaintiff's reply.

Plaintiff's petition, among other things, alleges, in substance, the following:

For eight years prior to September 26, 1933, relator was a patrolman within the city of Columbus, Ohio; that his position as patrolman was under the classified civil service of the city of Columbus.

On September 27, 1933, he was suspended by Chief of Police, Fred F. Kundts, and a hearing upon such suspension was heard by Curtis C. Williams, who was then Director of Public Safety, the latter being succeeded by Winfield S. Pealer. Plaintiff further alleges that within ten days thereafter, he filed an appeal to the Civil Service Commission of Columbus, Ohio; that a hearing was held thereunder and on the 6th day of November, 1933, said commission sustained said order of the Director of Public Safety and said plaintiff was dismissed as of September 27, 1933. It is further alleged in the petition that said proceedings were illegal and contrary to law; that no charges as contemplated at law were filed against the plaintiff; that such complaints as were filed against this plaintiff upon which said proceedings were predicated, were illegal and insufficient in law and that the evidence did not sustain even the charge alleged and that this plaintiff was wrongfully and illegally dismissed. And further, said defendant, Director of Public Safety and the said Civil Service Commis-

sion unjustly discriminated against plaintiff in the following manner, to-wit:

That the only complaint made against the plaintiff of record upon which said suspension was predicated and sustained was that he, while on duty, had attempted to make an engagement with a woman, who was married and the testimony disclosed the only claim made was that he attempted to make an engagement with a woman; plaintiff averring that he did not know whether the woman was married or single and had not insulted her and that there had been no immoral conduct proven; that after the hearing before the Director, the Director stated he did not know what to do and asked the plaintiff a question, which' was not pending before the Director; the answer being unsatisfactory to the Director, he thereupon dismissed him and it was this action of the Director that was sustained by the commission. The petition further alleges that in other like cases a less severe penalty has been imposed.

The joint answer of the defendants admits relator's appointment as patrolman as a civil service appointee and his discharge on September 27, 1933, as alleged. The answer also admits the appeal to the Civil Service Commission of Columbus, Ohio, where the order of dismissal by the Director of Public Safety was sustained. The answer contains a general denial of all the allegations of the petition except those specifically denied and then avers the following:

"On or about September 26, 1933, relator's superior, Pearl Boggs, Captain of Police, relieved relator from duty and filed with Fred F. Kundts, Chief of Police, the following written statement of reasons, to-wit:

"'Charge 1. Conduct unbecoming an officer, in violation of Par. 3-S of Chapter 2 of the Book of Rules for the Government of the Division of Police.

"'Specifications: In that Patrolman William S. Hattery, while on duty and in uniform, did loiter in a public place, did mingle with persons there assembled, and did force his presence and attention upon the wife of one of the patrons of the place, making undue advances towards this woman.'

"that on or about September 27, 1933, upon receipt of the charge and specification hereinabove set forth, Fred F. Kundts, Chief of Police, suspended relator from all duty in the Division of Police, basing his action on the charge and specification hereinabove set forth, and filed a written copy of the same with Curtis C. Williams, the Director

of Public Safety of the City of Columbus; that on September 30 1933, at about 10:00 A. M., hearing upon the charge and specification hereinabove set forth was had before said Director of Public Safety, at which hearing evidence was presented in support of said charge and specification and also on behalf of relator; that at the conclusion of said hearing decision was deferred until October 3, 1933, at which time the Director of Public Safety found the relator guilty as charged and ordered relator dismissed from his position; that thereafter on or about October 25, 1933, hearing was had on appeal before the Civil Service Commission of the City of Columbus, Ohio, at which hearing witnesses were called on behalf of the Director of Public Safety and on behalf of relator, at the conclusion of which the matter was taken under advisement by the Commission until November 6, 1933, when the Municipal Civil Service Commission sustained the action of the Director of Public Safety in dismissing the relator as patrolman in the Division of Police, effective September 27, 1933."

Plaintiff files an eight page reply in which the averments of the answer as to the proceedings attending the complaint, hearing, discharge appeal, etc., are admitted.

Thereafter relator alleges that he was appointed as patrolman from the classified list of the Civil Service employees by the Director of Public Safety on June 22, 1925, in pursuance of the authority provided by Section 100 of the Charter of the City of Columbus, Ohio.

It is alleged that no complaint was made or filed by the Director of Public Safety, who alone, under Section 100 of the Charter of such city, was authorized to institute proceedings for discharge against a civil service employee in the police department. Furthermore, that no legal complaint was served upon relator and thereafter a reasonable time given to make explanation as provided under Rule 22 of the Civil Service Commission.

The reply refers to and quotes from various sections of the charter of the city of Columbus and also pertinent rules promulgated by the Civil Service Commission of the city under authority of Section 149 of the City Charter.

The reply also complains that the Director of Public Safety in considering the complaint made by Captain Boggs, a superior of Hattery did not confine his inquiry to the specific allegations contained in the charge, but on the contrary based his ac-

tion on matters outside the specified complaint.

It is also alleged in the answer that the only charges or statements involving the relator filed with the Civil Service Commission on relator's appeal were the charges filed by the Chief of Police. The answer also questions the constitutionality of the charter provisions relating to Civil Service provisions and likewise questions the legality of the rules and regulations enacted by the City Civil Service Commission relating to suspension or discharge of a civil service employee.

Counsel for relator at great length and very earnestly argues that a municipality has no power to adopt charter provisions or enact ordinances or rules relating to civil service. As support for the above position, counsel refer to **Art. 15, §10 of the Ohio Constitution** as amended in 1912.

"Article 15, Section 10. Appointments and promotions in the civil service of the state, the several counties and cities, shall be made according to merit and fitness, to be ascertained as far as practicable by competitive examinations. Laws shall be passed providing for the enforcement of this provision."

It is urged that under this constitutional provision the entire civil service field is preempted and that the only authority to pass any laws relative thereto would be the legislature. Claim is made that since **§10, Art. 15 of the Constitution** contains the provision "laws shall be passed providing for the enforcement of this provision" municipalities and all other entities are concluded from entering the field of civil service legislation either through charter provisions, ordinances or authorizing rules and regulations by a Municipal Civil Service Commission. Counsel for relator goes so far as to question the right of a charter city to make provision in its charter for the appointment of a civil service commission. We do not understand that counsel questions the authority of municipalities to have and appoint a Municipal Civil Service Commission, having rights within a limited field of promulgating rules and regulations, but the position is taken that state legislature alone has the right to enact laws providing for such appointments and that it has so done through the enactment of §486-19, GC.

This identical question was presented to the Supreme Court of Ohio in the case of **State ex Lentz, et, Civil Service Commission v Edwards, et, 90 Oh St, 305.** The action was one in quo warranto in which relators who claimed to be the duly appointed, qualified and acting Civil Service Commissioners of the City of Dayton, contested the claims of the respondents as Civil Service Commissioners, appointed and inducted into office through the charter provisions of said city; the claim being made that the charter provisions were in conflict with **Art. 15, §10 of the Constitution** and the general civil service laws. The Supreme Court held against the relators and in favor of respondents. The Supreme Court in deciding the case called attention to **§3, Art. 18 of the Constitution of Ohio** enacted in 1912. This provision of the Constitution reads as follows:

"Section 3, Article 18. Municipalities shall have authority to exercise all power of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations as are not in conflict with general laws."

We also quote from **Section 7, Article 18:**

"Section 7, Article 18. Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of Section 3 of this article, exercise thereunder all powers of local self-government."

On page 309 of the per curiam opinion in **90 Oh St, supra,** we find the following:

"It would not be contended that the civil service of a city is not a matter of municipal concern nor that the power of regulating that service is not one of the powers of local self-government," etc.

Also, on page 309:

"The manner of regulating the civil service of a city is peculiarly a matter of municipal concern. One of the powers of local self-government is the power of legislating with reference to the local government within the limitations of the constitutional provisions above referred to."

On the following page is stated the power and limitation of charter cities:

"As long as the provisions made in the charter of any municipality with reference to its civil service comply with the requirement of Section 10 of Article XV, and do not conflict with any other provisions of the constitution, they are valid and under

the cases referred to discontinue the general law on the subject as to that municipality. That provisions adopted by a city might differ from the general laws within the limits defined was not only expected but the very purpose of the amendment was to permit such differences and make them effective." (Emphasis ours).

This decision of the Supreme Court has very clearly and definitely blazed the trail and under the issues in the instant case where charter provisions or rules and regulations are questioned, we need only look to the constitutional provision as contained within Art. 15, §10 of the Constitution. We need not be concerned as to conflict with other legislative enactments since the Supreme Court in the reported case has stated that the very purpose of Home Rule provisions and charter provisions, as contained in the amendments to the Constitution, was to permit differences from the general law so long as there was no conflict with Art. 15, §10 of the Constitution.

In determining the purpose, extent and limitations of the above constitutional amendment, we possibly can better understand the language used when we realize that civil service laws have been in existence within the state of Ohio long before the constitutional amendment of 1912. The amendment was very narrow and limited in its scope. The only mandate contained in the amendment is that appointments and promotions shall be made according to merit and fitness and so far as practicable the qualifications to be ascertained by competitive examination. In the instant case, the question of appointment and promotion is not involved and hence we need give no concern to any claimed violations of the provisions of the Constitution.

Counsel for relator recognizes the decision of the Supreme Court as being contra his position but argues at length that we should depart from the present rule and establish a precedent which he thinks is consistent with a contrary theory. We would not feel at liberty to ignore the rule of stare decisis and if for no other reason would be impelled to follow the decision of the Ohio Supreme Court. However, we might say we are in thorough accord with the reasoning of the Court and even if we were deciding the question anew, our announcement would be the same.

The legality of the hearings and discharge of relator is questioned, accompanied by persuasive arguments. This argument is presented independent of the constitutional question heretofore discussed. Counsel for relator has set forth in lettered paragraphs his basis for this claim of illegal discharge. We set these out in full:

"(a) The Relator was never presented or served with any charge or notice by the Director of Public Safety involving any charges, claims or specifications containing the statement that such charges and specifications and claims were made against the Relator for the purpose of determining whether or not the Relator should be discharged.

"(b) Relator was never presented with any complaint embracing any charges specifying that the Relator was to be discharged if found guilty, and was never given any time or opportunity by the appointing or discharging authority, within which to file an explanation or hearing upon any complaint filed against Hattery for the purpose of discharging him or before such discharge was made.

"(c) The Petitioner was served with and tried upon a complaint filed by the Chief of Police under rules No. 7, Chapter 2, Paragraph 3, Subdivision S, of the Rules for the government and administration of the Police Division of the City of Columbus, Ohio, which complaint and which rules provided grounds for the suspension only, of a Patrolman, and not for a discharge.

"(d) The Relator was tried and discharged upon specifications, charges, facts and evidence which were not embraced in the complaint as made by the Chief of Police or by any other officer, or by the appointing authority, or which embraced any charges specified in the Statute, Charter, or Civil Service Rules of the City of Columbus, Ohio as grounds for a discharge, as served upon this Relator, all of which is apparent upon the face of the record, upon the face of the order of dismissal or discharge made, issued, and entered by said Safety Director and said Civil Service Commission being identified as Exhibit K, order or dismissal by the Safety Director being dated October 3rd, 1933, and the order and judgment of the Civil Service Commission being dated October 25th, 1933.

"(e) There was no complaint filed against Hattery by the Safety Director or the appointing authority or by any one else authorized or empowered by law to file such charges, setting forth any grounds provided for, specified in the Statute or Charter warranting a discharge or dismissal of said Hattery, or which showed on its face that the purpose of the charge

and hearing was to determine whether said Hattery should be dismissed or discharged and no opportunity was given to said Hattery for an opportunity to file an explanation or to have a hearing on such charge as required by law.

"(f) After the order of discharge, Exhibit K, dated October 3, 1933 entered by said Safety Director, Hattery was given no time or opportunity to file an explanation thereon or therefore and was at no time given a hearing thereon before said Safety Director, before being discharged, or before said proceedings were certified to the Civil Service Commission of the City of Columbus, Ohio."

Before considering the facts as presented through the pleadings and the evidence, it is well to have in mind the pertinent provisions of the charter of the City of Columbus, together with the rules and regulations enacted by the Municipal Civil Service Commission under authority of the charter.

The charter was originally adopted May 5. 1914. Section 100 of the Charter reads as follows:

"**Section 100. Appointments.** Subject to the civil service provisions of this charter, the directors and other principal administrative officers and boards shall have power to appoint and remove all officers, clerks and employees in their respective departments."

Under the provisions of 101 of the charter, the Director of Public Safety is made the executive head of the division of police, fire, public welfare, building regulations and weights and measures and he shall have all the powers and duties connected with and incident to the appointment, regulations and government of his department, except as otherwise provided in the charter.

Section 149 reads as follows:

"**Section 149. Rules.** (Charter of the City of Columbus, page XXIX). The Commission shall prescribe, amend and enforce rules for the classified service, shall keep minutes of its proceedings and records of its examinations and shall make investigations concerning the enforcement and effect of the civil service provisions and of the rules thereunder. It shall make an annual report to the mayor. The rules shall provide:—

(1) For suspension, by the appointing authority, for purposes of discipline, for a period not to exceed thirty days at any one time.

(m) For discharge or reduction in rank or compensation, only after the person to be discharged or reduced has been presented with the reasons for such discharge or reduction, specifically stated in writing, and has been given an opportunity to be heard in his own defense. The reason for such discharge or reduction and any reply in writing thereto by such employe shall be filed with the commission.'

Section 108 of the charter reads as follows:

"**Section 108. Suspension in fire and police division.** The chiefs of the division of police and fire shall have the exclusive right to suspend any of the officers or employes in their respective divisions, for incompetence, gross neglect of duty, gross immorality, habitual drunkenness, failure to obey orders given by the proper authority, or for any other just and reasonable cause. If any officer or employe be suspended, as herein provided, the chief of the division concerned shall forthwith in writing certify the fact, together with the cause for the suspension, to the director of public safety, who, within five days from the receipt thereof shall proceed to inquire into the cause of such suspension and render judgment thereon, which judgment, if the charge be sustained, may be suspension, reduction in rank or dismissal, and such judgment in the matter shall be final, except as otherwise hereinafter provided. The director of public safety, in any such investigation, shall have the same power to adminster oaths and secure the attendance of witnesses and the production of books and papers as is conferred upon the council."

Section 109 of the charter reads as follows:

"**Section 109. Appeals to civil service commission.** Any person in the division of police or fire under the exclusive control of the chief thereof, who is suspended, reduced in rank or dismissed from the department by the Director of Public Safety, may appeal from the decision of such officer to the civil service commission within ten days from and after the date of such suspension, reduction or dismissal. In such event said Director shall, upon notice from the commission of such appeal, forthwith transmit to the commission a copy of the charges and proceedings thereunder, the commission shall hear such appeal within ten days from and after the filing of the same with the commission and may affirm, disaffirm or modify the judgment of the

director of public safety and its judgment in the matter shall be final."

Pertinent rules of the Civil Service Commission of the City of Columbus are now set forth in full.

**"Rule 21. Discharge or reduction; Tenure of office.** The tenure of every officer, employee or subordinate in the classified service of the City of Columbus or the City School District thereof, holding a position under the provisions of the City Charter and General Code shall be during good behavior and efficient service, but any such officer, employee or subordinate may be removed, dismissed or discharged or suspended for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of the provision of the charter and General Code, or rules of this commission, or any other failure of good behavior or any other act of misfeasance, malfeasance, or nonfeasance in office, or any other reasonable and just cause."

**"Sec. 2. Political opinion.** No person in the classified service or seeking admission thereto shall be appointed, promoted, transferred or reduced in pay or position, laid off, suspended, discharged or otherwise favored or discriminated against by an appointing officer or other person because of political or religious affiliations."

**"Sec. 3. Reductions.** In all cases of discharge or reduction in rank or compensation, lay-off or suspension of an employee or subordinate, whether appointed for a definite time or otherwise, the appointing authority shall furnish such employee or subordinate with a copy stating in writing a copy of the order of lay-off, reduction or suspension and his reasons for the same, and give such employee or subordinate a reasonable time in which to make and file an explanation and be heard in his own defense. Such order, together with the explanation if any of the subordinate or employee, shall be filed with the Commission."

**"Sec. 4. Removals.** In all cases of removal the appointing authority shall furnish such employee or subordinate with a copy of the order of removal and such reason for the same, and give such officer, employee or subordinate a reasonable time in which to make and file an explanation. Such order with the explanation if any of the employee or subordinate shall be filed with the commission."

**"Sec. 5. Right of Appeal.** Any such employee or subordinate in the division of police and fire and the Department of the Board of Education in the classified service, so removed, reduced in pay or position, laid off, suspended or discriminated against by such appointing authority, may appeal from the decision or order of such appointing authority to the Municipal Civil Service Commission within 10 days from and after the date of such removal in which event the Commission shall forthwith notify the appointing authority and shall hear such appeal within 10 days from and after its filing with the commission, and it may affirm, disaffirm, or modify the judgment of the appointing authority and the commission's decision shall be final."

Attention is called to the fact that Sections 108 and 109 of the charter provisions of the City of Columbus give to the Chiefs of the Division of Police and Fire exclusive right to suspend any of the officers or employees in their respective divisions on the specific grounds enumerated. Thereafter the Chief of the division is required to certify the fact together with the cause of suspension to the Director of Public Safety and the latter within five days shall proceed to inquire into the cause of such suspension. If the charge be sustained, the officer or employee may be suspended, reduced in rank or dismissed. Section 109 provides the procedure for appeal to the Civil Service Commission by the dismissed officer with the provision that the commission shall hear the appeal and after hearing may disaffirm or modify the decision of the Director of Public Safety and the decision in the matter shall be final.

While Sections 108 and 109 of the charter provisions only apply to fire and police divisions, Rule 21 as enacted by the Civil Service Commission of the City of Columbus is general in its application to all individuals in the classified service. We find that Sections 108 and 109 contain complete procedural steps for the removal or suspension in the division of fire and police and need no aid from Rule 21 as promulgated by the Civil Service Commission of the City.

Our attention is called to the fact that no provision is made in Section 108 for furnishing the officer with a copy of the order of lay-off, reduction or suspension with reasons for the same and thereafter giving such employee or subordinate a reas-

onable time within which to make and file an explanation as is provided in Sections 3 and 4 of Rule 21. If there is conflict, which controls, the charter provisions or the rules and regulations promulgated by the Civil Service Commission? We have no difficulty in arriving at the conclusion that the charter provisions will control for the reason that the City Civil Service Commission is a creature of the charter and its authority to promulgate rules would not be construed to vitiate or qualify other duly enacted charter provisions. To hold otherwise would be to declare that the power of the Civil Service Commission is greater than its creator. The preferring of the charge, and hearing by the safety director was substantially in compliance with Section 108 of the charter.

Complaint is made that the Director of Public Safety did not dismiss the relator, Hattery, from the service by reason of the specifications contained within the complaint, but on other grounds concerning which he had no notice or opportunity to be heard. In connection therewith the claim is also made that the action of the Safety Director was arbitrary.

The record discloses that following the hearing which was confined to the specific things set forth in the order of suspension, the Safety Director announced that he found the relator guilty. He continued the matter for three or four days to give consideration as to what his findings would be. Under Section 108 he had authority to suspend, reduce in pay, reduce in rank or discharge. At the subsequent date, the Safety Director interrogated the relator, Hattery, at some length relative to his (Hattery's) domestic troubles. It would appear that the Director had received information from some source that Hattery was not living with his wife and that another woman was probably responsible for the separation and that Hattery was rooming and boarding at the same house as was the other woman.

We doubt very much the propriety of the Safety Director predicating his determination to remove on matters entirely outside the scope of the specific charges. If this was the final order which removed the appellant from the service, in a proper case, we might be moved to action in his favor. However, relator took an appeal to the Civil Service Commission. This means a hearing de novo qualified by the provision that the transcribed testimony of the witnesses presented before the director shall be con-

sidered as evidence before the Commission. Sec. 6 of Rule 21. (See Reply.) The witnesses testifying before the director except by leave of the commission would not have a right to appear and testify the second time. The accused has the right to testify before the commission as would also other witnesses. It was the order of the Civil Service Commission that removed relator from service. Because the action of the Safety Director was unlawful and illegal, standing alone, would not be a reason for determining the action of the commission an abuse of discretion.

The purpose of an appeal is to correct errors. One tribunal or court may commit prejudicial error, the next tribunal or court to which the cause is carried may arrive at the same conclusions, but for different reasons.

A further question is raised that the penalty inflicted was much more severe than had been imposed in other similar cases. The greater portion of the evidence introduced in our Court is directed to this question. We have made a careful analysis of the evidence touching this question and are not able to determine that the commission abused its discretion. It appears that each case is determined upon its own facts. In some instances the nature of the complaint may be similar but the supporting facts would be different. Reasonable minds might differ as to what should be done in each case.

We are unable to find that the Civil Service Commission wrongfully affirmed the judgment of the Safety Director.

We are unable to conclude that relator presents a case through which this Court would be warranted in issuing the extraordinary writ of mandamus.

There is a further reason why the writ should not issue and that is on the ground of laches. The Supreme Court of Ohio in the case of **State ex rel, v Witter, 114 Oh St 357,** had a case before it much stronger in its facts than the instant case. In the reported case the relator was discharged from his position, held and protected under the Civil Service laws. On appeal the Civil Service Commission reversed the order of the appointing authority and notified the director that the removal was illegal and relator was entitled to the tenure of his office. The director refused to reinstate relator. The order of the commission was made April 5, 1923, and the action in mandamus filed June 30, 1925. The Supreme Court denied a writ of mandamus in the

exercise of its discretion on the ground that the relator had inexcusably allowed an unreasonable time to elapse before the bringing of his action. In support of the holding there was cited 18 R.C.L., 335, 38 Corpus Juris, 833 and **Chinn v Trustees, 32 Oh St, 236.**

In the instant case one year and eight months had elapsed from the date of the removal until the bringing of the action. The same principle will apply as in the reported case.

The petition will be dismissed at relator's cost.

HORNBECK and GEIGER, JJ, concur.

## ON APPLICATION FOR REHEARING

Decided July 11th, 1938

BY THE COURT:

The above entitled cause is now being determined on plaintiff's application for rehearing. The application sets forth twelve separate specifications. The accompanying memoranda contain fifty pages of typewritten matter, and bear evidence of much thought and laborious effort. In the main there is a re-argument of the proposition presented through the original hearing supplemented by citations from courts of last resort and excerpts therefrom.

Considerable space and argument are given to the question of laches which was injected into the case for the first time through the opinion of this Court.

In our original opinion we called attention to what we considered the scope and effect of the appeal to the Civil Service Commission of the city of Columbus from the order of removal made by the Safety Director of the city. Counsel for relator very persuasively urges the impropriety of the Service Director considering questions outside of the scope of the complaint in ordering relator's removal from service. The record discloses that the inquiry before the Service Director was confined to matters germane to the complaint up to the point that the relator was found guilty of the charges. Thereafter the cause was continued for three days, and it then appears that the director was in a measure influenced by other matters not germane to the complaint in announcing the maximum penalty of discharge.

Relator took an appeal to the Civil Service Commission. The matter was there heard on the transcript of evidence before the Service Director plus additional evidence taken before the commission. In our original opinion we stated that this was a qualified de novo hearing. We used the term 'qualified de novo hearing' for the reason that the rule controlling the hearing before the commission prescribed that the appeal should be heard on the transcribed evidence taken in the original hearing together with such other evidence as the commission permitted to be taken.

Counsel for relator now very earnestly urge that the hearing before the Civil Service Commission was in no sense a de novo hearing for the additional reason that the commission have no power except to affirm, disaffirm or modify the judgment of the Safety Director. We concede that this is a correct statement of the law. To our minds this is a distinction without a difference. The law says that the commission shall affirm, disaffirm or modify the judgment. Their power in entering judgment is as broad as could possibly be given. The power to take and the taking of additional testimony is our reason for stating that the hearing before the commission was a qualified de novo hearing.

The additional testimony may strengthen the complaint or may completely and satisfactorily answer the charges. Again, the word 'appeal' as used in the law prescribing the method of carrying the cause to the Civil Service Commission in the absence of anything in the law to the contrary would be construed as having the usual meaning at the time the law was enacted. Counsel for relator contends that the review before the Civil Service Commission is no more than a proceeding in error. The right and power to take additional testimony refutes this claim, nor can we find any language in the law supporting this contention. But whether a qualified de novo hearing or an error proceeding we still think the determination of the Civil Service Commission was a final order. If an error proceeding the purpose of the review would be to correct errors. Reviewing courts very frequently determine that the reviewing court was in error relative to some phase of the case, but that such errors were not prejudicial, and affirm the judgment. By whatever name the review is designated the power was given to the commission to 'affirm, disaffirm or modify the judgment'.

We know of no direct authority through which the commission would be authorized

to remand for a new trial. Where a court or other entity having quasi judicial powers have jurisdiction to hear and determine a matter every presumption favors the correctness of their determination unless it affirmatively appears otherwise. Applying this principle to the hearing before the Civil Service Commission it is presumed that they acted within the law and considered no elements other than those properly to be considered. Since the matter was before the Civil Service Commission on appeal their order is the final judgment.

Counsel for relator now contends that the matter was not appealable and therefore the commission had no jurisdiction to hear and determine. This places the plaintiff in the anomalous position of questioning his own appeal.

This may be done where there is no jurisdiction of the subject matter. It has been repeatedly held in this state that the question of jurisdiction may be raised at any time, either by the parties or sui sponte by the Court. The parties may not agree or consent to jurisdiction of subject matter. We have no difficulty in determining against plaintiff's contention on this complaint.

In the interest of not making this opinion unduly lengthy we will refrain from commenting on the numerous decisions and excerpts therefrom presented through plaintiff's memorandum. Suffice it to say that we have examined these cases and have no quarrel with the enunciations there made under the questions then under consideration. A careful reading of our original opinion should at once suggest the reasons why we think the decided cases are not applicable. In the instant case we have the pertinent legislation of a charter city together with the authorized rules and regulations. When analyzing decided cases we must have in mind the pertinent legislation together with the manner in which the question is now raised.

Counsel for plaintiff devotes many pages of his memoranda questioning our observation relative to laches. The statement is made and authorities cited supporting the claim that the defense of laches must be pleaded. Generally this is true but it does not apply to actions in mandamus. Mandamus is an extraordinary remedy and may be granted or withheld within the sound discretion of the court. The case of **State ex Smith v Witter, Director, etc., 114 Oh St, 357,** is much stronger in its facts than is the instant case. This is the case cited in our original opinion and supporting the theory of laches. The case was filed originally in the Supreme Court and asked for a mandatory writ against the Director of the Department of Industrial Relations of Ohio to restore the relator to his position upon the rolls of the department and to issuing of warrants for salaries, etc. In this reported case the statement of facts discloses that in a hearing before the Civil Service Commission the order of dismissal had been disaffirmed. We have taken the time to examine the original papers in this case which we found available in the office of the reporter of the Supreme Court. Laches was not pleaded in the answer of the defendant nor was it presented through the briefs of counsel for the defendant. The pleadings disclose the dates of removal and other dates of the various steps that were taken, but the Supreme Court, notwithstanding the question was not raised denied the writ on the ground of laches.

Many other questions have been presented through the application for rehearing and the accompanying memoranda, but we do not think that any useful purpose can be served in extending this opinion to any greater length.

We have examined all questions and have examined cited authorities. It is our determination that the application for rehearing will be denied.

BARNES, PJ, HORNBECK & GEIGER, JJ, concur.

## SECOND APPLICATION FOR REHEARING

Decided July 22nd, 1938

BY THE COURT:

Plaintiff, through his counsel, presents a second application for rehearing. This procedure is unusual and not recognized or provided for under our rules.

However, we have examined the eight page document and find no reason for receding from our former opinion.

We make no further comments, thinking that enough has already been written.

The application will be overruled.

BARNES, PJ, HORNBECK & GEIGER, JJ, concur.